# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>KLAUSNER LUMBER TWO LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 20-11518 (KBO)<br><br>**Hearing Date**:<br>December 17, 2020 at 10:00 a.m. (ET)<br>**Objection Deadline**:<br>December 8 at 4:00 p.m. (ET) |

### MOTION OF THE DEBTOR FOR ENTRY AN ORDER (I) AUTHORIZING AND APPROVING AMENDMENT TO DIP CREDIT FACILITY, (II) AMENDING THE SECOND FINAL DIP ORDER ON ACCOUNT OF SUCH AMENDMENT, AND (III) GRANTING RELATED RELIEF

Klausner Lumber Two LLC (the "Debtor") hereby moves pursuant to sections 105, 361, 362, 363, 364(c)(1) and 364(c)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Amended DIP Order")[2] (i) approving the Debtor's entry into the Amended and Restated Senior Secured Term Loan Note attached as Exhibit A to the Amended DIP Order (the "Amended Note") and authorizing the Debtor to deliver all instruments and perform all acts in connection therewith, (ii) amending the Second Final DIP Order (as defined below) on account of the Amended Note, and (iii) granting related relief. In support of this motion (this "Motion"), the

---

[1] The last four digits of the Debtor's EIN is 4897.  The Debtor's mailing address is P.O. Box C, Redding Ridge CT, 06876.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Amended DIP Order.

Debtor relies on the *Declaration of Robert Prusak in Support of the Motion of the Debtor for Entry of an Order (I) Authorizing and Approving Amendment to DIP Credit Facility, (II) Amending the Second Final DIP Order on Account of Such Amendment, and (III) Granting Related Relief* and *Declaration of J.T. Atkins in Support of the Motion of the Debtor for Entry of an Order (I) Authorizing and Approving Amendment to DIP Credit Facility, (II) Amending the Second Final DIP Order on Account of Such Amendment, and (III) Granting Related Relief* attached hereto as **Exhibit B** and **Exhibit C**, respectively, and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. sections 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. section 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

2. The statutory predicates for relief sought herein are sections 105(a), 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 9014, and Local Rule 4001-2. The Debtor confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules and Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I. GENERAL BACKGROUND**

3. On June 10, 2020 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (this "Case") in the Bankruptcy Court for the District

of Delaware (this "Court"). No Trustee or examiner has been appointed in this Case. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. On June 25, 2020, the United States Trustee for the District of Delaware (the "US Trustee") appointed the official committee of unsecured creditors (the "Committee").

5. The Debtor is the owner of a state-of-the-art timber sawmill located in Halifax County, North Carolina.

6. Additional details regarding the Debtor, its business, and the facts and circumstances leading up to the Petition Date are set forth in the *Declaration of Robert Prusak in Support of Debtor's Bankruptcy Filing* [Docket No. 6].

## II. EXISTING DIP ORDERS AND PROPOSED AMENDMENT

7. On August 13, 2020, the Debtor filed its *Motion of the Debtor for Entry of an Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 130] (the "Original DIP Motion"), pursuant to which the Debtor requested authority to, among other things, enter into a post-petition senior secured superpriority term loan (the "DIP Credit Facility") in an aggregate amount of $3,500,000.00 from Legalist DIP SPV I, LP (the "Tranche A DIP Lender").

8. On September 8, 2020, after addressing issues raised by creditor Carolina Sawmills, L.P. ("CSLP"), the Court entered the *Final Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According*

*Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 212] (the "First Final DIP Order").

9. Pursuant to the First Final DIP Order, the Court approved a post-petition senior secured superpriority loan from the Tranche A DIP Lender to the Debtor not to exceed the aggregate amount of $3,400,000.00 (the "Tranche A Term Loan") plus any accrued capitalized interest and fees, as evidenced by that certain Senior Secured Term Loan Note (the "Tranche A DIP Note"). Upon entry of the First Final DIP Order, the Debtor drew approximately $2,625,000.00 on the Tranche A Term Loan.

10. Subsequently, on November 9, 2020, the Court entered the *Second Final Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 378] (the "Second Final DIP Order" and together with the First Final DIP Order, the "DIP Orders") authorizing the Debtor to draw the $775,000.00 remaining under the Tranche A Term Loan.

11. The Debtor applied the proceeds of the Trance A Term Loan consistent with the approved budgets attached to the DIP Orders, but due to delays associated with litigation and negotiating a global resolution of various matters with CSLP, the Committee, and Halifax County, North Carolina, the Debtor is seeking additional financing to ensure it has sufficient funds to maintain its assets, pay the administrative costs of this Case, and close on the value-maximizing sale contemplated in the *Order (I) Scheduling a Hearing on the Approval of a Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Encumbrances, and the*

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Designating Stalking Horse Purchaser and Approving Certain Bid Protection, and (IV) Granting Related Relief* [Docket No. 421] (the "Bid Procedures Order"). While the outside date under the Debtor's stalking horse asset purchase agreement is January 29, 2021, the Debtor's existing budget only provides sufficient runway through January 2, 2021.

12. The Debtor cannot grant any new liens on the DIP Collateral without the Tranche A DIP Lender's consent. *See* Second Final DIP Order, ¶ 17. However, after good-faith, arm's-length negotiations, Legalist DIP Fund I, LP (the "Tranche B DIP Lender" and together with the Tranche A DIP Lender, "DIP Lenders") has agreed to provide the Debtor up to $2,100,000.00 in new funding (the "Tranche B Term Loan") thereby increasing the aggregate principal amount of the DIP Credit Facility to $5,500,000.00 pursuant the terms set forth in the Amended Note (the "DIP Amendment"), and the Tranche A DIP Lender has consented to the DIP Amendment. Additionally, CSLP and the Committee support the relief sought in the Motion. *See also Order Approving Stipulation Regarding Motion to Approve County Settlement* [Docket No. 377], Ex. 1 at ¶ 9.

13. Without such cash infusion at this juncture, the Debtor will be put at risk of not being able to successfully implement a sale of its assets that should generate a minimum of $33.3 million. The proceeds of the Tranche B Term Loan will be used by the Debtor to pay maintenance costs of the Debtor's assets, certain negotiated payments for the benefit of CSLP, and costs accrued in connection with this Case, including partial payments for professionals who

have deferred a portion of their fees during this Case.[3] Importantly, the Tranche B Term Loan will be on substantially the same terms as the Tranche A Term Loan, including interest rates, collateral package, covenants, and budget testing. The only substantive change the Debtor seeks through this Motion is to increase the size of the DIP Credit Facility.

## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2 DISCLOSURES

14.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the salient terms of the Tranche B Term Loan are as follows:[4]

| | |
|---|---|
| **Borrower:** | Klausner Lumber Two, LLC |
| **Tranche B DIP Lender:** | Legalist DIP Fund I, LP |
| **Closing Date:** | The date on which the funding of the Tranche B Term Loan occurs. |
| **Maturity:** | The earliest to occur of: (a) 550 days after entry of the First Final DIP Order; and (b) 90 days after an Event of Default has occurred, if any. |
| **Availability:** | The Tranche B DIP Lender agrees to provide the Debtor with a term loan in the principal amount of $2,100,000. The aggregate principal amount outstanding pursuant to the DIP Credit Facility shall not exceed $5,500,000.00, plus any accrued capitalized interest and fees (including fees and expenses of the DIP Lenders, underwriting fees, and commitment fees), subject to any limitation of credit extensions under the DIP Credit Facility or the Amended DIP Order (the "Amended Maximum Amount"). Amounts under the DIP Credit Facility may be borrowed and repaid, but may not be reborrowed. |
| **Interest Rate:** | See Original DIP Motion. |
| **Use of Proceeds:** | Amounts borrowed under the Tranche B Term Loan shall be used exclusively in accordance with the Approved Budget attached as to Exhibit B to the Amended DIP Order. |

---

[3] Even with the additional funding under the Trance B Term Loan, certain of the Debtor's professionals in this Case will only receive approximately 40% of their projected accrued fees and expenses from the Petition Date through December 31, 2020, and will receive no amounts on account of any fees or expenses projected to accrue in 2021.

[4] The summaries contained in this motion are qualified in their entirety by the provisions of the Amended DIP Order. To the extent anything in this motion is inconsistent with the Amended DIP Order, the terms of the Amended DIP Order shall control.

| | |
|---|---|
| **Fees:** | Commitment Fee: $93,500.00, fully and irrevocably earned on, and capitalized and accruing from, entry of the Amended DIP Order and payable to the DIP Lenders upon the Maturity Date.<br><br>Underwriting Fee: $59,500.00, fully and irrevocably earned on, and capitalized and accruing from, entry of the Amended DIP Order and payable to the DIP Lenders upon the Maturity Date.<br><br>Undrawn Line Fee: Any undrawn portion of the Amended Maximum Amount shall accrue a fee from entry of the Amended DIP Order of 4.75% per year, which fee shall accrue monthly in arrears and be treated as Capitalized Interest under the DIP Credit Facility.<br><br>Makewhole Fee: Any repayment of the DIP Credit Facility required to be made prior to 180 days after entry of the Amended DIP Order shall accompanied by an additional fee of 3.00% of the amount required to be repaid.<br><br>Amendment Fee: 2.50% of the Tranche A Term Loan balance, fully and irrevocably earned on, and capitalized and accruing from, entry of the Amended DIP Order, solely with respect to the Tranche A Term Loan and payable to the Tranche A DIP Lender upon the Maturity Date.<br><br>Legal Fees. All fees and expenses of the DIP Lenders, including without limitation, legal and consulting fees and expenses shall be paid by the Debtor. The DIP Lenders are authorized to capitalize such fees and expenses by capitalizing such fees and expenses on the last business day of each calendar month and by adding such capitalized fees and expenses to the principal amount due under the DIP Credit Facility. |
| **Scheduled Interest and Principal Payments:** | See Original DIP Motion. |
| **Mandatory Prepayments:** | See Original DIP Motion. |
| **Collateral:** | See Original DIP Motion. |
| **Excluded Collateral:** | See Original DIP Motion. |
| **Conditions Precedent:** | See Original DIP Motion. Entry of the Bid Procedures Order included as additional condition precedent for borrowings under the Tranche B Term Loan. |

| | |
|---|---|
| **Documentation:** | See Original DIP Motion. |
| **Certain Affirmative Covenants:** | See Original DIP Motion. |
| **Certain Negative Covenants:** | See Original DIP Motion. |
| **Budget:** | See Original DIP Motion. |
| **Expenses and Indemnification:** | See Original DIP Motion. Indemnification includes both DIP Lenders. |

## BASIS FOR RELIEF

### I. Entry into the DIP Amendment Is a Reasonable Exercise of the Debtor's Business Judgment and Is in the Debtor's Best Interests.

15. The standards for approving debtor-in-possession financing are set forth in detail in the Original DIP Motion. This Court found that those standards had been met when it approved the Original DIP Motion and entered the DIP Orders. *See also In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest."). Those standards are clearly satisfied here in connection with the Tranche B Term Loan as evidenced by the DIP Amendment. The Debtor continues to incur expenses in the maintenance of its assets and in administering this Case, and requires additional funding beyond that authorized by the DIP Orders to cover such expenses and avoid any interruptions that could impact or delay consummation of the sale process set forth in the Bid Procedures Order.

16. The Tranche B Term Loan provides such additional funding sufficient to enable the Debtor to consummate a value-maximizing sale of substantially all of its assets. The Debtor has no viable alternative to the Tranche B Term Loan to obtain such additional funding, and the Tranche A DIP Lender has consented to the DIP Amendment. Further, the Committee and CSLP have confirmed to the Debtor that they support the DIP Amendment. As a result of the foregoing, the Debtor has determined in its sound business judgment that the DIP Amendment is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

II. **Waiver of Stay Period Under Bankruptcy Rule 6004(h) Is Appropriate.**

17. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor submits that there is no reason to delay the effectiveness of the order approving this Motion. The upsized DIP Credit Facility is immediately necessary to provide the Debtor access to much-needed funds and time to complete its asset sale. Accordingly, waiver of the 14-day stay period under Bankruptcy Rule 6004(h) is appropriate.

**RESERVATION OF RIGHTS**

18. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief

requested by this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

19.     The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware, Attn: Rosa Sierra, 844 King Street, Suite 2207, Wilmington, Delaware 19801, rosa.sierra@usdoj.gov; (b) the Committee; (c) counsel to the DIP Lenders; (d) counsel to the Prepetition Lender; (e) the County; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; (g) any party that has asserted a lien against the Debtor; and (h) any such other party entitled to notice pursuant to Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

20. Other than the Original DIP Motion, no prior request for the relief sought in this Motion has been made to this Court or any other court.

Dated: November 24, 2020

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Nader A. Amer*
Robert J. Dehney (No. 3578)
Eric Schwartz (No. 3134)
Daniel B. Butz (No. 4227)
Nader A. Amer (No. 6635)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dbutz@mnat.com
namer@mnat.com

*and*

**WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP**
Thomas A. Draghi (admitted *pro hac vice*)
Alison Ladd (admitted *pro hac vice*)
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
Facsimile: (516) 622-9212
Email: tdraghi@westermanllp.com
aladd@westermanllp.com

*and*

**DINSMORE & SHOHL, LLP**
Kim Martin Lewis (admitted *pro hac vice*)
Travis Bayer (admitted *pro hac vice*)
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
Email: kim.lewis@dinsmore.com
travis.bayer@dinsmore.com

*Co-counsel to Klausner Lumber Two LLC*